**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JONATHAN COUTTS, et al.,**<br>　　　　*Plaintiffs,*<br><br>　　　**v.**<br><br>**STATE FARM FIRE & CASUALTY<br>COMPANY,**<br>　　　　*Defendant.* | **Civil No. 24-5770** |

**MEMORANDUM**

**Costello, J.**                                                                                           **March 26, 2026**

This case involves a homeowners' insurance dispute between Plaintiffs Jonathan and

Melissa Coutts and Defendant State Farm Fire & Casualty Company.  Plaintiffs submitted a

claim under a policy issued by Defendant ("the Policy") for storm-related damage to the interior

and roof of their home.  After consulting an independent expert, Defendant reimbursed Plaintiffs

for some portions of their claim but denied others as excluded losses under the Policy.  Plaintiffs

disagreed with Defendant's decision and, through their public adjuster, demanded appraisal

under the Policy's appraisal provision.  Defendant refused to participate in the appraisal process

because it contends Plaintiffs failed to satisfy certain procedural requirements prior to issuing

their demand.  Plaintiffs subsequently brought this action for breach of contract and bad faith

under Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371.  They argue that Defendant's

refusal to participate in the appraisal process constitutes bad faith under the statute.  Defendant

moved for partial summary judgment on the bad faith claim.  For the reasons that follow, the

Court will grant Defendant's motion.

I.      **BACKGROUND**

The parties dispute whether Plaintiffs' demand for appraisal complied with the terms and conditions of the Policy.  The Policy contemplates that, should the parties disagree on the amount of loss, either party may "demand that the amount of loss be set by appraisal."  *See* ECF No. 21 at 14.  To trigger the appraisal process, "[a]t least 10 days before demanding appraisal, the party seeking appraisal must provide the other party with written, itemized documentation of a specific dispute as to the amount of the loss, identifying separately each item being disputed."  *Id.*

Defendant contends that Plaintiffs demanded appraisal before Defendant received written and itemized documentation of Plaintiffs' disputed losses in direct contravention of the Policy's appraisal provision.  *See* ECF No. 22 at 1-3.  Plaintiffs eventually submitted documentation by producing a report by Paramount Home Solutions containing an itemized estimate of the disputed losses (the "Paramount Report").  ECF No. 21 at 14-15.  But Defendant never received another appraisal demand after Plaintiffs produced the Paramount Report, so its duty to engage in the appraisal process was never triggered.  ECF No. 22 at 2-3.  Defendant argues that it was merely enforcing the express terms of the Policy, which cannot constitute bad faith.  *Id.*

Plaintiffs respond that they made several attempts to send the Paramount Report to Defendant prior to issuing their appraisal demand, but Defendant purposefully ignored these communications.  *See* ECF No. 21 at 5, 10.  They argue that, at minimum, Defendant was on "notice" that Plaintiffs were trying to comply with the terms of the Policy and therefore its refusal to engage in appraisal was in bad faith.  *See* ECF No. 21 at 5, 10.

II.     **LEGAL STANDARD**

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  The summary judgment standard is modified for statutory bad faith claims under Pennsylvania law.  To prevail on a claim of bad faith under Section 8371, a plaintiff must demonstrate that "1) the insurer lacked a reasonable basis for denying benefits and 2) the insurer knew or recklessly disregarded its lack of reasonable basis."  *Lee v. State Farm Fire & Cas. Co.*, 23cv3605, 2025 WL 2044173, at *3 (E.D. Pa. July 18, 2025) (citing *Klinger v. State Farm Mutual Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)).  These elements "must be demonstrated by clear and convincing evidence."  *Id.*  Indeed, evidence of an insurer's bad faith must be "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendant[] acted in bad faith."  *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011).

### III.    DISCUSSION

#### A.    Application of the Heightened Summary Judgment Standard

This case presents an unusual application of the heightened summary judgment standard for statutory bad faith claims.  Most cases involve a direct challenge to a denial of benefits under an insurance policy issued by the defendant.  The court then must decide whether there is "clear and convincing evidence" that the defendant lacked a reasonable basis for denying benefits and that the defendant knew or recklessly disregarded its lack of reasonable basis.  *Lee*, 2025 WL 2044173, at *3.

In contrast, the basis for Plaintiffs' bad faith claim in this action is Defendant's refusal to engage in the appraisal process.  Plaintiffs argue that Defendant knew, or at least was on notice, that Plaintiffs were attempting to satisfy the procedural prerequisites for initiating appraisal.  *See* ECF No. 21 at 15.  They argue that Defendant intentionally ignored these attempts in bad faith to circumvent the appraisal process.  *Id.*; *see also* ECF No. 29 at 20:24-21:7.  Accordingly, the

3

relevant inquiry is whether there is "clear and convincing evidence" that Defendant lacked a reasonable basis for refusing to engage in the appraisal process, and whether Defendant knew or recklessly disregarded its lack of a reasonable basis for its refusal. *Lee*, 2025 WL 2044173, at *3.

### B.      Timeline of Events Surrounding Plaintiffs' Appraisal Demand

The terms of the Policy clearly require the party seeking appraisal to submit a written, itemized estimate of disputed damages to the other party at least ten days prior to issuing an appraisal demand. *See* ECF No. 21 at 14. The record demonstrates that Plaintiffs did not comply with this requirement.

Plaintiffs' public adjuster first attempted to send the Paramount Report to Defendant via email on June 25, 2024.[1] Although the email had an image of an attachment, no attachment was actually included. *See* ECF No. 20-6 at 2 (August 8, 2024 letter from Defendant to public adjuster noting that "the email you had sent on 06/25/2024 was said to have included an attachment with a roof inspection report. This attachment was not included and was never received."). On June 28 and July 9, 2024, Plaintiffs' public adjuster purportedly tried to follow up on the unreceived attachment, but none of Defendant's representatives "contacted [the public adjuster] to advise nothing was received." ECF No. 21 at 151 (August 8, 2024 claim notes from Defendant's records).

Plaintiffs claim that on July 16, 2024, Plaintiff Jonathan Coutts also tried to send the Paramount Report to Defendant and called Defendant to confirm receipt, but no one called him

---

[1] Plaintiffs claim that they sent the Paramount Report to Defendant as early as May 7, 2024, citing an email with a Paramount roofing agent. *See* ECF No. 21 at 13-14. However, as Defendant points out, the attachments in that email are likely *Defendant's* claim assessment records, since Paramount did not even issue its report until May 22, 2024.

back.  ECF No. 21 at 14.  The record includes a July 24, 2024 claim note stating that Jonathan Coutts contacted Defendant and "stat[ed] he has sent documents and [Defendant] has not returned his calls."  *Id.* at 152.  But there is no record evidence corroborating whether Plaintiff actually sent, and Defendant actually received, the Paramount Report on this date.  *See* ECF No. 29 at 5:11-22.

Even though they had not received confirmation of receipt of the Paramount Report, Plaintiffs' public adjuster issued a formal demand for appraisal via letter on July 19, 2024.  *See* ECF No. 20-5.  The letter notes that "[d]espite our numerous emails and communications with both you and the claims department, we have yet to receive any response.  This lack of communication, in our view, constitutes a direct violation of fair claims settlement practices."  *Id.* at 3.

On August 8, 2024, Defendant sent Plaintiffs' public adjuster a letter confirming receipt of Plaintiffs' appraisal demand.  *See* ECF No. 20-6 at 2-3.  The letter noted, however, that the June 25, 2024 email purporting to contain the Paramount Report did not actually contain an attachment and the estimate "was never received."  *Id.* at 2.  Defendant instructed Plaintiffs to "re-submit this information if you would like further consideration."  *Id.*  A claim file entry on August 8, 2024 also notes that Defendant informed Plaintiffs' public adjuster that if the Paramount Report was over 25MB, it likely was not accepted as an email attachment in Defendant's system.  *See* ECF No. 21 at 151.  The entry indicates that Defendant sent the public adjuster a link through which to upload the Report.  *Id.*

A subsequent claim file entry shows that Plaintiffs' public adjuster called Defendant to confirm whether Defendant received the Paramount Report submitted on August 9, 2024.  ECF No. 21 at 151.  On August 16, 2024, Defendant sent Plaintiffs' public adjuster a letter explaining

that it had received the materials sent on August 9, 2024. *See* ECF No. 20-8. This is the first indication that Defendant actually *received* the Paramount Report. The letter further explained that, after reviewing the report, Defendant maintained its position that the additional claimed losses were not covered by the Policy because they were caused by "wear, tear, and deterioration, and in some cases, mechanical damage." *See id.* There is no record evidence that Plaintiffs made another formal demand for appraisal after submitting the Paramount Report. Instead, Plaintiffs commenced this action in September 2024.

### C.  Whether Defendant's Refusal to Participate in Appraisal Constitutes Bad Faith

There is simply no evidence supporting a finding of bad faith by Defendant. Plaintiffs' position is that Defendant intentionally ignored communications from Plaintiffs about the Paramount Report and thwarted Plaintiffs' ability to comply with the terms of the Policy. *See* ECF No. 29 at 8:21-9:8, 40:10-24 (arguing that the only reason Plaintiffs did not comply with the terms of the appraisal provision in the Policy is because Defendant purposefully ignored Plaintiffs as a stall tactic). The only evidence that could plausibly support Plaintiffs' position is an errant note in Defendant's claim records. *See* ECF No. 21 at 151 (claim notes from Defendant's records). The claim record is an agent's summary of a call during which Plaintiffs' public adjuster says that he tried to follow up on the unreceived email attachment on June 28 and July 9, but none of Defendant's representatives "contacted [the public adjuster] to advise nothing was received." *Id.*

But, as Plaintiffs admitted during oral argument on this motion, there is no actual evidence in the record corroborating that Plaintiffs sent the Paramount Report on these dates or any date ten days prior to their July 19th appraisal demand. *See* ECF No. 29 at 13:12-18 (admitting that there is no "smoking gun" showing Plaintiffs sent, and Defendant received, an

estimate ten days prior to making their appraisal demand).  Moreover, Defendant explained that it did not have a duty under the Policy to follow up with Plaintiffs about unreceived claims documentation or otherwise help claimants submit information.  *See id.* at 9:9-13.

Rather, the record clearly demonstrates that the earliest Defendant received the Paramount Report was August 9, 2024. [2]  *See* ECF No. 20-8.  That is not ten days prior to the issuance of the July 19, 2024 appraisal demand, and therefore inconsistent with the express terms of the Policy.  The Court finds that Defendant's decision to enforce the plain terms of this contract was reasonable and does not amount to bad faith.  *See Lee*, 2025 WL 2044173, at *3.

The reasonableness of Defendant's conduct is underscored by the fact that Defendant informed Plaintiffs of the deficiency with their appraisal demand and instructed Plaintiffs that they could try again ten days after re-submitting the Paramount Report.  ECF No. 20-6 at 2-3. Rather than heed these instructions and issue a procedurally proficient appraisal demand, Plaintiffs filed suit.  *See* ECF No. 29 at 14:6-8 (Plaintiffs admitting during oral argument that there was "no rationale" behind why Plaintiffs filed suit rather than filing a second, timely appraisal demand); *see id.* at 39:2-3 (Defendant representing that it would have participated in appraisal had Plaintiffs issued a procedurally proper demand).

Consequently, Plaintiffs have failed to demonstrate by "clear, direct, weighty and convincing" evidence that Defendant lacked a reasonable basis for refusing to participate in the appraisal process.  *See Amica Mut. Ins. Co.*, 656 F.3d at 179.  Defendants are therefore entitled to

---

[2] The record also indicates that August 9, 2024 is likely the earliest that Defendant *could have* received the Paramount Report.  The August 8, 2024 claim file entry explains that Defendant's email system cannot receive attachments larger than 25MB, which is likely why earlier attempts by Plaintiffs' public adjuster to send the Paramount Report were unsuccessful.  ECF No. 21 at 151.  Defendant sent a link for Plaintiffs to upload the Report on August 8, 2024.  *Id.*  This is further evidence that Defendant could not have accessed the Paramount Report until Plaintiffs' public adjuster uploaded it through that link on August 9, 2024.  *See id.*

summary judgment on Plaintiffs' bad faith claim. *See Lee*, 2025 WL 2044173, at *3 (defendant entitled to summary judgment where plaintiff fails to show there was no reasonable basis for insurer's action and defendant did not know of or recklessly disregard its lack of reasonable basis).

## IV.     CONCLUSION

Because Plaintiffs did not satisfy their burden to demonstrate by clear and convincing evidence that Defendant lacked a reasonable basis for refusing to participate in the appraisal process, the Court will grant Defendant's motion for summary judgment on Plaintiffs' bad faith claim. An appropriate Order will follow.

BY THE COURT:

MARY KAY COSTELLO
United States District Judge

8